**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
phaines@haineslawgroup.com
Tuvia Korobkin (SBN 268066)
tkorobkin@haineslawgroup.com
Stacey M. Shim (SBN 305911)
sshim@haineslawgroup.com
222 N. Sepulveda Blvd., Suite 1550
El Segundo, California 90245
Tel: (424) 292-2350/Fax: (424) 292-2355

Attorneys for Plaintiffs ADAM GARDINER and JOSEPH GRECO

**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Jeff Geraci (SBN 151519)
jgeraci@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Tel: (619) 595-3001/Fax: (619) 595-3000

**HAMNER LAW OFFICES, APC**
Christopher J. Hamner, Esq. (SBN 197117)
chamner@hamnerlaw.com
5023 Parkway Calabasas
Calabasas, CA 91302-1421
Tel.: (818) 876-9631

Attorneys for Plaintiff SEAN CONROY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ADAM GARDINER, JOSEPH GRECO, and SEAN CONROY, as individuals and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> TSYS BUSINESS SOLUTIONS, LLC, f/k/a TRANSFIRST, LLC, a Delaware limited liability company; TOTAL SYSTEM SERVICES, INC., a Georgia corporation; and DOES 1 through 100, <br><br> Defendants. | Case No. 8:18-cv-00415-DOC-(JCGx) <br><br> [*Assigned for all purposes to the Hon. David O. Carter, Courtroom 9D*] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date:      September 17, 2018 <br> Time:      8:30 a.m. <br> Courtroom: 9D <br><br> Action Filed:  September 8, 2017 <br> Removed:     March 15, 2018 <br> TAC Filed:    July 25, 2018 <br> Trial Date:    None Set |

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 23(e) and 29 U.S.C. § 216(b), on September 17, 2018 at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 9D of the above-entitled Court, located at the Ronald Reagan Federal Building, United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, before the Honorable David O. Carter, Plaintiffs Adam Gardiner, Joseph Greco, and Sean Conroy ("Plaintiffs"), as individuals and on behalf of a class of similarly situated individuals, will and hereby does move this Court for:

1. Preliminary approval of the proposed Settlement of this lawsuit;

2. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, provisional certification of the following Settlement Class defined as:

   **Settlement Class** – All of Defendants TSYS Merchant Solutions, LLC and Total System Services, Inc.'s ("Defendants") current and former non-exempt Sales Representatives or Account Executives in California who were paid pursuant to Defendants' recoverable draw-based commission compensation plan(s), at any time since September 8, 2013, through the date the Court grants preliminary approval of the Settlement Agreement.

3. Preliminary appointment of Plaintiffs Adam Gardiner, Joseph Greco, and Sean Conroy as Class Representatives;

4. Preliminary appointment of Paul K. Haines, Tuvia Korobkin, and Stacey Shim of Haines Law Group, APC, and Isam C. Khoury, Michael D. Singer, and Jeff Geraci of Cohelan Khoury & Singer, as Class Counsel;

5. The scheduling of a Final Approval Hearing to consider whether the Settlement should be finally approved, including proposed amounts for Settlement Administrator costs and the PAGA payment to the Labor and Workforce Development Agency, and to consider Class Counsel's Motion for Class Representatives Incentive Payments and attorneys' fees and costs;

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

6.   Appointment of Kurtzman Carson Consultants LLC as the third-party Settlement Administrator for mailing notices; and

7.   Approval of the proposed Class Notice and entry of the proposed Order instructing the Class Notice to be disseminated to the proposed Settlement Class as provided in the Settlement.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Paul K. Haines, Tuvia Korobkin, Stacey Shim, Michael D. Singer, Adam Gardiner, Joseph Greco, Sean Conroy, and Derek Smith on behalf of Kurtzman Carson Consultants LLC, and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Dated: August 13, 2018

Respectfully Submitted,
HAINES LAW GROUP, APC

By:   ____/s/ Paul K. Haines_____

Paul K. Haines
Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................... 1

II.     SUMMARY OF THE LITIGATION ........................................ 3

  A.  PLAINTIFFS' CLAIMS .......................................................... 3

  B.  DEFENDANTS' DEFENSES................................................... 5

  C.  DISCOVERY AND MEDIATION............................................ 7

III.    THE PROPOSED SETTLEMENT .......................................... 8

  A.  ESSENTIAL TERMS OF THE SETTLEMENT ..................... 8

    1.  The Settlement Provides for Reasonable Monetary Payments ................... 8

    2.  Attorneys' Fees, Costs, and Representative Incentive Payments ............. 10

IV.     ARGUMENT ........................................................................... 12

  A.  PRELIMINARY APPROVAL IS WARRANTED ................... 12

    1.  Standard for Preliminary Approval ........................................... 13

      a.  The Strength of Plaintiffs' Case.................................... 13

      b.  Risk, Expense, Complexity, and Duration of Further Litigation.............. 14

      c.  Risk of Maintaining Class Action Status .................................. 15

      d.  Amount Offered in Settlement Given Realistic Value of Claims............ 15

      e.  Discovery Completed and the Status of Proceedings…………………... 20

      f.  The Experience and Views of Counsel .................................... 20

    2.  The Preliminary Approval Standard is Met ................................. 21

      a.  The Settlement is Within the Range of Possible Approval ..................... 21

      b.  The Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations ............................................. 22

      c.  The Settlement is Devoid of Obvious Deficiencies................................. 22

  B.  THE SETTLEMENT MERITS CERTIFICATION ................... 22

i

1.  The Proposed Class is Numerous ................................................. 22

2.  Common Issues of Law and Fact Predominate ........................................... 23

3.  The Claims of the Named Plaintiffs Are Typical ........................................ 23

4.  Plaintiffs and Class Counsel Are Adequate ................................................ 23

5.  Rule 23(b)(3) Predominance is Satisfied ……………………………….. 24

C.  THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS ......... 24

V.  CONCLUSION ........................................................................... 25

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

**Federal Cases**

*Alonzo v. Maximus, Inc.* (C.D. Cal. 2011) 832 F. Supp. 2d 1122 ......................... 23

*Amchem v. Windsor* (1997) 521 U.S. 591 .............................................................. 24

*Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566 ........ 25

*Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268 ..................................... 21

*Eisen v. Carlisle and Jacquelin* (1974) 417 U.S. 156 .......................................... 24

*Franklin v. Kaypro Corp.* (9th Cir. 1989) 884 F.2d 1222 .................................... 12

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011 ......................... 13, 23, 24

*In re Bluetooth Headset Products Liability Litigation*
   (9th Cir. 2011) 654 F.3d 935 ............................................................................ 12

*In re Cont'l Ill. Sec. Litig.* (7th Cir. 1992) 962 F.2d 566 ...................................... 10

*In re Mercury Interactive Corp.* (9th Cir. 2010) 618 F.3d 988 ............................. 12

*In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373 ........ 20

*In re Syncor ERISA Litigation* (9th Cir. 2008) 516 F.3d 1095 ............................. 12

*Leyva v. Medline Industries, Inc.* (9th Cir. 2013) 716 F.3d 510 ........................... 23

*McCown v. City of Fontana* (9th Cir. 2009) 565 F.3d 1097 ................................. 12

*National Rural Tele. Coop. v. DIRECTTV, Inv.*
   (C.D. Cal. 2004) 221 F.R.D. 523 ...................................................................... 14

*Rodriguez v. West Publishing Corp.* (9th Cir. 2003) 563 F.3d 948 ...................... 13

**State Cases**

*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal. App. 4th 1157 .............................. 19

*Bluford v. Safeway, Inc.* (2013) 216 Cal. App. 4th 864 .......................................... 4

*Gonzalez v. Downtown LA Motors, LP*
   (2013) 215 Cal. App. 4th 36 ....................................................................... 3, 5, 18

*In re Cellphone Fee Termination Cases* (2010) 186 Cal. App. 4th 1380 ............. 10

*Laffitte v. Robert Half Int'l Inc.* (2016) 1 Cal.5th 480 .......................................... 11

*Ling v. P.F. Chang's China Bistro, Inc.* (2016) 245 Cal. App. 4th 1242 .......... 6, 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

*Price v. Starbucks Corp*. (2011) 192 Cal. App. 4th 1136 ........................................ 6

*Thurman v. Bayshore Transit Management, Inc.*
  (2012) 203 Cal. App. 4th 1112 ................................................................ 6, 19

*Vaquero v. Stoneledge Furniture LLC* (2017) 9 Cal. App. 5th 98 ................. 3, 4, 5

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal. App. 4th 224 ...................... 11-12

**Federal Statues and Rules**

29 CFR § 778.109 ................................................................................. 4

F.R.C.P. Rule 23 ....................................................................... 13, 22-23

**State Statutes and Rules**

8 Cal. Code Regs. § 13520 ..................................................................... 6

Labor Code § 201 ................................................................................ 5

Labor Code § 202 ................................................................................ 5

Labor Code § 203 ................................................................................ 5

Labor Code § 226 ................................................................................ 5

Labor Code § 2699(e)(2) ........................................................................ 6

**Unpublished Cases**

*Altamirano v. Shaw Industries, Inc*,
  Case No. 13–cv–00939–HSG, 2015 WL 4512372
  (N.D. Cal. July 24, 2015) .................................................................. 20

*Fleming v. Covidien, Inc.*
  (C.D. Cal. Aug. 12, 2011) Case No. ED CV 10-01487 RGK (OPx),
  2011 WL 7563047 ........................................................................ 6, 19

*Green v. Lawrence Service Co.*
  (C.D. Cal. 2013) 2013 WL 3907506 ....................................................... 19

*Gribble v. Cool Transports Inc.*,
  Case No. CV 06-04863 GAF SHx, 2008 WL 5281665
  (C.D. Cal. Dec. 15, 2008) ................................................................. 21

*In re First Capital Holdings Corp. Financial Products*,
  Case No. MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .............. 22

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

*In re Portal Software, Inc. Securities Litig.*,
  Case No C-03-5138 VRW, 2007 WL 4171201
  (N.D. Cal. Nov. 26, 2007) ...................................................................... 14

*Jones v. Spherion Staffing LLC*
  (C.D. Cal., Aug. 7, 2012, No. LA CV11-06462 JAK)
  2012 WL 3264081 .......................................................................... 6, 18

*Schiller v. David's Bridal, Inc.*,
  Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001
  (E.D. Cal. June 11, 2012) ...................................................................... 22

*Williams v. Centerplate, Inc.*,
  Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428
  (S.D. Cal. Aug. 26, 2013) ...................................................................... 22

## **Other Sources**

4 Newberg on Class Actions (4th Ed. 2013) .................................... 12, 21

Manual for Complex Litigation (3rd Ed. 1995).............................. 13, 21

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Adam Gardiner, Joseph Greco, and Sean Conroy ("Plaintiffs") are pursuing this putative class action lawsuit (the "Lawsuit") on behalf of all of Defendants TSYS Merchant Solutions, LLC and Total System Services, Inc.'s (collectively, "Defendants") non-exempt Sales Representatives or Account Executives in California who were paid pursuant to Defendants' recoverable draw-based commission compensation plan(s) at any time from September 8, 2013 through the date the Court grants preliminary approval (the "Class Period") of the Settlement Agreement and Release of Claims (the "Settlement" or "Settlement Agreement")[1] (hereinafter, Plaintiff and Defendants are collectively referred to as the "Parties").   Plaintiffs' operative Third Amended Complaint alleges that Defendants: (1) failed to pay all overtime wages, under both the Fair Labor Standards Act and the California Labor Code; (2) failed to pay all minimum wages owed; (3) failed to authorize and permit all rest periods; (4) failed to provide accurate and itemized wage statements; (5) failed to pay all final wages to employees upon their separation of employment; (6) engaged in unfair business practices; and (7) is liable for civil penalties under the Private Attorneys General Act ("PAGA") Labor Code section 2698 *et seq*.

Through this Motion, Plaintiffs respectfully request that the Court preliminarily approve this non-reversionary, $1,285,000.00 class action Settlement on behalf of the following Class:

> **Settlement Class** – All of Defendants' non-exempt Sales Representatives or Account Executives in California who were paid pursuant to Defendants' recoverable draw-based commission compensation plan(s) at any time since September 8, 2013 through

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul K. Haines, filed concurrently herewith. The proposed Class Notice is attached to the Settlement Agreement as Exhibit A.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

the date the Court grants preliminary approval of the Settlement.

According to Defendants' records, there are approximately 337 Class Members. The Settlement calls for Defendants to pay a Gross Settlement Amount ("GSA") of $1,285,000.00. This represents an outstanding result for the Class Members who will be releasing only those claims that were actually asserted or which could have been asserted based on the same set of operative facts alleged in the Lawsuit. After Court-approved deductions for Plaintiffs' Incentive Payments, Settlement Administrator's costs, the PAGA payment to the Labor & Workforce Development Agency ("LWDA"), and attorneys' fees and costs to Class Counsel, the remaining Net Settlement Amount ("NSA") will be no less than $760,166.67. Significantly, Class Members do not need to file a claim in order to receive a an individual settlement payment, and all Class Members who do not opt-out will automatically receive individual settlement payments. Further, all participating Class Members who worked one or more workweeks between September 8, 2014 and the date of the Court's order granting preliminary approval of the Settlement will be eligible to opt-in to claim additional settlement monies for the release of their claims under the Fair Labor Standards Act ("FLSA"). The average payment to each participating Class Member is estimated to be approximately $2,255.68.

Prior to reaching this proposed Settlement, Defendants provided Plaintiffs with key class data, including the number of Class Members, Class Members' timekeeping and payroll information, and relevant policy documents in effect during the Class Period. After extensive legal research and analysis, along with a comprehensive review by Plaintiffs' counsel of Defendants' produced data, the Parties participated in a mediation session with Jeffrey A. Ross, Esq., a preeminent wage and hour class action mediator, on February 12, 2018. At the conclusion of mediation, Mr. Ross made a written mediator's proposal for a class-wide settlement, which was accepted by both sides and subsequently memorialized into the long-form Settlement Agreement now before this Court for preliminary approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

This proposed Settlement is well within the range of possible approval in light of the significant legal and factual obstacles that Plaintiffs faced, the risks and costs of further litigation, and the substantial monetary benefits to the Class Members.  For the reasons discussed herein, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.

## II.    SUMMARY OF THE LITIGATION

Defendants are merchant processors that provide credit card processing, debit card processing, and other payment processing services for retailers and merchants. Declaration of Paul K. Haines ("Haines Decl."), ¶ 10. Plaintiffs, like all other Class Members, worked for Defendants as Sales Representatives and/or Account Executives in California, and were paid pursuant to Defendants' recoverable draw-based commission compensation plan(s) during the Class Period. *Id*.

### A.    PLAINTIFFS' CLAIMS

Throughout the Class Period, Defendants paid Plaintiffs and the Class Members using recoverable draw commission pay plans, whereby any "draw" paid to the Class Members could be recouped by Defendants should the Class Members' commissions for the pay period exceed the value of the draw. Haines Decl., ¶ 11. Plaintiffs allege that Defendants failed to separately compensate the Class Members for time spent working on tasks which did not generate commissions including, for example, time spent attending meetings and working on accounts for which they were not earning commissions (so-called "non-productive" time) thereby resulting in Plaintiffs and the Class Members not being paid at least the minimum wage for all hours worked. *Id*.; *see Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 40-41 (2013) ("*DTLA*") (holding that where an employee is paid on a piece-rate basis, but is also required to complete tasks which are not assigned any piece-rate value, the pay plan fails to compensate for all hours worked); *Vaquero v. Stoneledge Furniture LLC*, 9 Cal. App. 5th 98, 110-11 (2017) ("We conclude, however, that Wage Order 7 applies equally to ***commissioned employees***, employees paid by

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

piece rate, or any other compensation system that does not provide [separate] compensation for rest breaks **and other nonproductive time**.") (emphasis added). Plaintiffs further allege that, on occasions where Plaintiffs and Class Members worked over eight hours in a workday and/or 40 hours in a workweek, Defendants' failure to compensate Plaintiffs and Class Members separately for all non-productive time resulted in Plaintiffs and Class members not being paid all overtime compensation owed. Haines Decl., ¶ 11.  Specifically, Plaintiffs assert that the value of earned wages for non-productive time must be included in Plaintiffs and the Class Members' regular rates of pay for overtime purposes, which Defendants failed to do. *Id*.; *see also* 29 CFR § 778.109 ("The regular hourly rate of pay…is determined by dividing his **total remuneration for employment**…") (emphasis added).

Plaintiffs further allege that Defendants failed to authorize and permit Class Members to take all lawful, paid rest periods when they worked shifts in excess of 3.5 hours in length, because Defendants' commission-based compensation plan(s) fail to separately compensate the Class Members for required rest periods. *See Bluford v. Safeway, Inc.*, 216 Cal. App. 4th 864 (2013) (holding that, where employees are paid on an "activity-based compensation system," employers must pay employees separately for rest periods, and finding that "[t]here is no dispute that Safeway's activity-based compensation system did not separately compensate drivers for their rest periods."); *Stoneledge, supra*, 9 Cal. App. 5th at 110-11 (holding that the requirement to pay separately for rest periods "applies equally to commissioned salespersons."); Haines Decl., ¶ 12. Plaintiffs allege that Defendants' failure to separately compensate Class Members for required rest periods also resulted in unpaid minimum wages owed. Haines Decl., ¶ 12.

Plaintiffs also allege that Defendants required the Class Members to often perform off-the-clock work, including, but not limited to, checking and responding to work-related e-mails after work hours without being paid for this time. Haines Decl., ¶ 13.  Plaintiffs allege that, because they generally worked at least eight hours

per workday and 40 hours per workweek, this off-the-clock time frequently resulted in additional unpaid daily and/or weekly overtime wages. *Id.*

As a result of these alleged violations, Plaintiffs assert that Defendants maintained inaccurate payroll records, issued inaccurate wage statements, and failed to pay Class Members all final wages at the time of separation, in violation of Labor Code sections 226 and 203. Haines Decl., ¶ 14; *see also* Labor Code §§ 201-203, 226. Plaintiffs also seek civil penalties under PAGA for these alleged violations, pursuant to Labor Code sections 2698 *et seq.* Haines Decl., ¶ 14.

## B.   **DEFENDANTS' DEFENSES**

Defendants contend that the Class Members experienced minimal (if any) uncompensated "non-productive" time. Haines Decl., ¶ 15. Further, Defendants contend that class certification based on this theory of liability is improper, as individualized inquiries will predominate. *Id.* Specifically, since the alleged "non-productive" time was not separately recorded by Class Members, Defendants assert that each Class Member will need to individually attest to their daily hours worked on non-productive activities, which is highly individualized and not proper for a certified class action. *Id.* Moreover, Defendants point out that the issue of whether non-productive time is compensable under a commission-based pay plan has not been adjudicated at the appellate level, and therefore, there is no case law precedence that binds this Court to the conclusion that such a pay plan is unlawful to begin with. *Id.* Rather, Defendants assert that the two cases upon which Plaintiffs rely, *DTLA* and *Stoneledge*, both involved piece-rate pay plans, and any discussion regarding commissioned employees was purely dicta. *Id.*

Defendants also argue that any liability for its failure to separately compensate Class Members for rest periods would be limited to back-pay for the rest periods themselves (i.e. 10 minutes of pay per rest period), as opposed to the one-hour rest period penalties per workday permitted under Labor Code section 226.7, which Plaintiffs sought. Haines Decl., ¶ 15.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

As to the derivative penalties, Defendants argue that there is no basis for the imposition of waiting time penalties, which are only available for the "willful" failure to pay wages. Haines Decl., ¶ 16; *see also* 8 Cal. Code Regs. § 13520 ("[A] good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203…"). Defendants also contend that Plaintiffs' rest period claim could not support a claim for waiting time penalties. *See Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal. App. 4th 1242, 1261 (2016) (finding rest period premium pay compensates for the non-provision of rest periods, not for the 'nonpayment of wages' as required by Labor Code § 203); Haines Decl., ¶ 16.

Defendants further argue that the alleged wage statement violations were not "knowing and intentional," and that Plaintiffs could not show they or the other Class Members "suffer[ed] injury" due to the alleged wage statement violations, as required by Labor Code section 226(e) for imposition of wage statement penalties. Haines Decl., ¶ 17. Defendants also contend that Plaintiffs' rest period claim cannot support a claim for wage statement penalties. *Id.*; s*ee also, e.g., Jones v. Spherion Staffing LLC*, Case No. LA CV11-06462 JAK, 2012 WL 3264081, at *8-9 (C.D. Cal., Aug. 7, 2012) (holding wage statement penalties not recoverable for meal and rest period violations). Finally, since Plaintiffs' PAGA claim is derivative of the underlying wage claims, Defendants assert that the PAGA claim will fail with those claims. Haines Decl., ¶ 17; *see Price v. Starbucks Corp*., 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail."). Defendants maintain that, given their good faith defenses, this Court would exercise its discretion to reduce any PAGA penalties awarded. Haines Decl., ¶ 17; *see also* Labor Code § 2699(e)(2); *Thurman v. Bayshore Transit Mgmt., Inc*., 203 Cal. App. 4th 1112, 1135 (2012) (affirming reduction of PAGA penalties); *Fleming v. Covidien Inc*., Case No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (C.D. Cal., Aug. 12, 2011) (reducing PAGA penalties from $2.8 million to $500,000).

In addition, Defendants also assert that some of Plaintiffs' claims are affected by a previous settlement. Haines Decl., ¶ 18.   Specifically, Defendant TSYS' predecessor settled a class action in 2016 that involved largely the same class of employees.[2] *Id.*; *see also Benjamin G. Nable v. Transfirst, LLC*, Case No. 8:15-cv-00891-DOC-JCG, United States District Court, Central District of California, Honorable David O. Carter presiding ("*Nable*") (granting final approval of class action settlement on October 19, 2016.).   Defendants argue that, as a result of the *Nable* release, <u>all</u> of the putative Class Members have already released their rights to bring claims for alleged minimum wage violations that occurred prior to May 24, 2016, and any putative Class Member who separated their employment with Defendants prior to May 24, 2016 have also released their rights to bring claims for waiting time penalties. Haines Decl., ¶ 18.

## C.   <u>DISCOVERY AND MEDIATION</u>

In connection with mediation, Defendants provided Plaintiffs with key class data, including the number of current and former Class Members and their dates of separation, Class Members' timekeeping and payroll information, and relevant policy documents in effect during the Class Period. Haines Decl., ¶ 19. Plaintiff conducted an analysis of this data and created a comprehensive damages analysis to calculate the likely exposure that Defendants faced on each claim. *Id.*

On February 12, 2018, the Parties participated in a mediation with Jeffrey A. Ross, Esq., a highly respected wage and hour class action mediator in California. Haines Decl., ¶ 20. During mediation, the Parties exchanged divergent views on Defendants' liability and potential exposure, debated their legal positions, and shared their arguments regarding the likelihood of certification of Plaintiffs' claims. *Id.*   At the conclusion of mediation, Mr. Ross made a mediator's proposal for a

---

[2] Plaintiffs' counsel here, Paul K. Haines of Haines Law Group APC, represented the named plaintiff and settlement class in *Nable*.  Defendants' counsel here, John R. Giovannone of Seyfarth Shaw LLP, represented the *Nable* defendant, TransFirst LLC.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

class-wide settlement, which was ultimately accepted by both sides. *Id*. After months of further negotiations over the finer points of the deal, the Parties memorialized the Settlement Agreement now before the Court. *Id*.

## III.   THE PROPOSED SETTLEMENT

### A.   ESSENTIAL TERMS OF THE SETTLEMENT

If the Court preliminarily approves this settlement, Defendants will pay a GSA of $1,285,000.00. Settlement, ¶ 5.1. This Settlement is non-reversionary, and Class Members will automatically receive their individual settlement payment unless they affirmatively opt-out of the Settlement. *Id*., ¶ 4.2. Moreover, each Class Member who does not opt-out and who worked one or more workweeks between September 8, 2014 and the end of the Class Period shall be eligible to claim a check containing the FLSA portion of his or her Individual Settlement Payment, subject to additional opt-in procedures. *Id*., ¶ 5.6.1.  The monetary terms of the settlement are summarized below:

| | |
|---|---|
| **Gross Settlement Amount:** | **$1,285,000.00** |
| Minus Court-approved attorneys' fees (1/3): | $428,333.33 |
| Minus Court-approved attorneys' costs (up to): | $20,000.00 |
| Minus Court-approved incentive payments: | $22,500.00 |
| Minus Settlement Administrator costs (up to): | $16,500.00 |
| Minus PAGA payment to the LWDA: | $37,500.00 |
| **Net Settlement Amount:** | **$760,166.67** |

### 1.   The Settlement Provides for Reasonable Monetary Payments

After deducting amounts for court-approved attorneys' fees and costs, incentive payment, settlement administration costs, and the LWDA's share of PAGA penalties, the Settlement requires Defendants to pay an NSA of at least $760,166.67 to the Settlement Class.[3] *See* Settlement, ¶ 1.17.  Any amounts requested for attorneys' fees and costs, settlement administration costs, and

---

[3] Defendants' share of payroll taxes on the amounts paid to the Class Members as wages will be paid from the GSA. See Settlement ¶ 1.17.  This was a material term of the Settlement that was negotiated for during mediation. Haines Decl., ¶ 21.

8

incentive payments that are not approved by the Court will remain part of the NSA to be distributed to the Class Members. *Id.*, ¶¶ 5.2.1, 5.3.1, and 5.4.

The NSA will be allocated to the participating Class Members as follows: (1) $100,000 will be allocated as the FLSA Fund, distributed proportionally to all participating Class Members who worked one or more workweeks between September 8, 2014 and the end of the Class Period, based on each Class Member's individual workweeks worked during that time period compared to the total number of workweeks worked by all participating Class Members during that time period; (2) 85% of the remaining NSA to all participating Class Members who worked during the Class Period, distributed proportionally based on each Class Member's individual workweeks worked during the Class Period compared to the total number of workweeks worked by all participating Class Members during the Class Period; (3) 10% of the remaining NSA to all participating Class Members who were employed by Defendants at any point between September 8, 2016 and the end of the Class Period, distributed proportionally based on each Class Member's individual workweeks worked during that time period compared to the total number of workweeks worked by all participating Class Members during that time period; and (4) the remaining 5% of the NSA distributed on a pro-rata basis to all participating Class Members whose employment with Defendants was terminated at any point between September 8, 2014 and the end of the Class Period. *See* Settlement, ¶¶ 5.6.1.

Individual payments will be calculated using Defendants' payroll data kept in the ordinary course of business.  Defendants' records indicate that there are approximately 337 Class Members. *See* Settlement, ¶ 1.5. Based on the allocation formula, participating Class Members will receive average payments of approximately $2,255.68. Haines Decl., ¶ 22.  Class Members will have 60 calendar days from the mailing of the Class Notice to opt-out or object to the Settlement, thereby providing ample time to review the Class Notice without unduly delaying

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

the Settlement. *See* Settlement, ¶ 4.1.  Those Class Members who do not opt-out of the Settlement will be bound by its terms and will release all claims against Defendants that were asserted or could have been asserted under California law based on the operative facts alleged in the Lawsuit, for the period of September 8, 2013 through the date the Court grants preliminary approval of the Settlement. *Id.*, ¶ 6.2.  Further, participating Class Members who are eligible to receive a portion of the FLSA Fund may opt-in to receive additional settlement monies by endorsing, cashing, or depositing the FLSA Fund check, and will thereby release all claims against Defendants that were asserted or could have been asserted under the FLSA based on the operative facts alleged in the Lawsuit, for the period of September 8, 2014 through the end of the Class Period. *Id.*, ¶¶ 5.6.1, 6.1.

## 2.   Attorneys' Fees, Costs, and Representative Incentive Payments

As part of the Settlement, Plaintiffs will apply for Incentive Payments at the time of seeking final approval of the Settlement in the amount of $7,500.00 each ($22,500 total) for their services to the Settlement Class and the general release of all claims (known or unknown) against Defendants. *See* Settlement, ¶¶ 5.3, 6.3; Haines Decl., ¶ 23. "[I]ncentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." *In re Cellphone Fee Termination Cases*, 186 Cal. App. 4th 1380, 1393-94 (2010); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) ("Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit…"). Plaintiffs' requested incentive payments are intended to recognize the significant benefits conferred upon the Settlement Class due to the time and effort that Plaintiffs expended on behalf of the Settlement Class, including providing factual information and documents to Class Counsel, identifying potential witnesses, and attending in-person and telephonic meetings with Class Counsel to discuss the claims and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

theories at issue in the litigation, as well as the significant risks Plaintiffs undertook by agreeing to serve as the named plaintiffs in this case (including the unwanted notoriety of attaching their names to a public filing against a previous employer), and the fact that Plaintiffs have agreed to the general release of all claims subject to a waiver of Civil Code section 1542. Haines Decl., ¶ 23; *See generally,* Declaration of Adam Gardiner ("Gardiner Decl."); Declaration of Joseph Greco ("Greco Decl."); Declaration of Sean Conroy ("Conroy Decl."); Settlement, ¶¶ 1.16, 6.3.

Class Counsel will also apply for an attorneys' fee award of one-third of the GSA, and up to $20,000.00 in verified costs reimbursement. *See* Settlement, ¶¶ 1.3, 5.2; Haines Decl., ¶ 24. Plaintiff submits that the requested fee is fair compensation for undertaking complex, risky, expensive, and time-consuming litigation on a purely contingent fee basis. Class Counsel incurred substantial attorneys' fees conducting pre-filing investigation, analyzing Plaintiffs' claims, conducting legal research and analysis, interviewing putative Class Members, reviewing documents and data produced by Defendants, building a comprehensive damages model, preparing for and attending mediation, negotiating and preparing the long-form Settlement Agreement, preparing this motion for preliminary approval, and otherwise litigating the case. Haines Decl., ¶ 24. Class Counsel will also expend future attorney time in attending the hearing on this Motion, overseeing the Notice process, drafting the Final Approval Motion and supporting documents, and attending the Final Approval hearing, among other tasks, including fielding questions from Settlement Class Members. *Id.*

Both California and federal courts have recognized that an appropriate method for awarding attorneys' fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *See Laffitte v. Robert Half Int'l Inc.* (2016) 1 Cal.5th 480, 506 ("the percentage of fund method survives in California class action cases…"); *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254 (recognizing both the "percentage of recovery" and

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

"lodestar/multiplier" methods); *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010) (finding that, where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method); *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar"); *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (stating the ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"). Historically, courts have awarded percentage fees in the range of 20% to 50%. *See* 4 *Newberg on Class Actions* § 14.6 (4th Ed. 2013) ("Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund.").

Class Counsel submits that the request for attorneys' fees is reasonable when viewed as an overall percentage of the settlement (one-third) in light of the substantial risks and significant work undertaken, the extremely positive results obtained for the class, and the efficiency with which the Parties conducted the litigation. Should the Court grant preliminary approval, Class Counsel will seek an award of attorneys' fees and verified litigation costs at the time of seeking final approval of the Settlement.

## IV. ARGUMENT

### A. PRELIMINARY APPROVAL IS WARRANTED

It is the policy of federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). Settlement is the preferred means of dispute resolution, particularly in complex class action litigation. *See In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008). Judicial approval of a class action settlement entails a two-step process: (1) a preliminary review by the Court; and (2) a final review after notice has been distributed to the Class

Members for their comment or objections. *See* Manual for Complex Litigation §

30.41 (3rd Ed. 1995).

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (stating that Rule 23(e) requires the trial court to determine "whether a proposed settlement is fundamentally fair, adequate, and reasonable"). The Court's role in evaluating a proposed settlement is limited to ensuring that the agreement taken as a whole is fair and is not the product of fraud or collusion between the negotiating parties. *See e.g.*, *Hanlon*, 150 F.3d at 1027.

## 1. <u>Standard for Preliminary Approval</u>

To make a fairness determination, the Court should consider several factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2003). As discussed below, the proposed Settlement is fair, adequate, and reasonable in light of the overall balance of factors in this case.[4]

### a. <u>The Strength of Plaintiffs' Case</u>

Class Counsel carefully vetted the claims at issue, reviewed Class Members' timekeeping and payroll data and Defendants' relevant policy documents, and conducted a detailed analysis of that data to create a comprehensive damages model for Defendants' liability. *See* Haines Decl., ¶ 25. Although Plaintiffs steadfastly maintain that their claims are meritorious, Plaintiffs acknowledges that there were

---

[4] Because there are no governmental participants, Plaintiffs do not address the seventh factor. Further, should the Court grant preliminary approval and order that Notice be given to the Class Members, Plaintiffs will address the eighth factor in their motion for final approval.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT

substantial risks and uncertainty in proceeding with class certification and trial. As explained in detail in section II.B., *supra*, Defendants presented numerous defenses to Plaintiffs' claims, both on the merits and with respect to class certification. Although Plaintiffs were prepared to litigate these claims through class certification and, ultimately, through trial, it was far from certain that Plaintiffs would recover a greater amount at trial than was offered in settlement, particularly after considering the increased litigation costs that would accrue. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inv.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Thus, this factor supports preliminary approval of the Settlement.

### b.   Risk, Expense, Complexity, and Duration of Further Litigation

Although Plaintiffs conducted extensive informal discovery prior to mediation, the Parties agreed to postpone formal discovery and depositions until after exhausting settlement efforts at mediation. *See* Haines Decl., ¶ 25. Therefore, absent settlement, the Parties would need to conduct extensive formal discovery and prepare the case for class certification and trial. *Id*.  Moreover, Plaintiffs had not yet filed for class certification, and the Parties faced the prospect of appeals in the wake of a disputed class certification ruling for Plaintiffs and/or an adverse summary judgment ruling. *Id*.  This Settlement avoids the considerable attorneys' fees and costs associated with conducting formal discovery, moving for class certification and potentially summary judgment or adjudication, and ultimately, trial, as well as the accompanying burden of continued litigation on the Court. *See In re Portal Software, Inc. Securities Litig*., Case No C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.").

///

///

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

### c.   Risk of Maintaining Class Action Status

At the time of the Parties' proposed Settlement, Plaintiffs had not yet filed their motion for class certification. Given Defendants' numerous arguments that individualized issues would predominate Plaintiffs' claims, absent the Settlement, there was a risk that there would not be a certified class at the time of trial. Thus, this factor supports preliminary approval of the Settlement.

### d.   Amount Offered in Settlement Given Realistic Value of Claims

This proposed Settlement provides a substantial monetary recovery for the Class Members in the face of disputed claims, with individual settlement payments averaging $2,255.68. After analyzing Defendants' data, Plaintiffs prepared a class-wide exposure analysis and forecasted the expected recovery as follows:

Unpaid Non-Productive Time ("*DTLA*"): **$101,088**

Plaintiffs argue that if employees are spending time attending meetings and working on accounts for which they were not earning commissions, then the time is "non-productive," and should be separately compensable outside of Defendants' commission-based pay plan. *See* Haines Decl., ¶ 26. Plaintiffs estimate that Defendants are liable for a total of approximately 8 hours of unpaid non-productive time per pay period. *Id.* Therefore, Plaintiffs estimate Defendants' maximum potential liability for unpaid wages in the amount of $149,760 (936 pay periods * 8 hours * $10.00 minimum wage * 2 (liquidated damages)). *Id.*

Defendants argue that all work performed was "directly related" to commission-earning activities, and therefore the Class Members experienced minimal (if any) uncompensated "non-productive" time. *See* Haines Decl., ¶ 26. Defendants also argue that Plaintiffs' claim is not amenable to class treatment because employees did not separately record the time spent working on "non-productive" tasks, and therefore it would require an unmanageable series of mini-trials to determine how much time each employee spent on non-productive activities. *Id.* Plaintiffs therefore discounted this claim by 25% for a risk of non-

certification, and by an additional 10% for risk of being unsuccessful on the merits, for a projected total of $101,088. *Id.*

Overtime Wage Violations: **$31,398.35**

Plaintiffs allege that Defendants failed to pay Plaintiffs and the Class Members all overtime wages owed when they worked at least eight hours per workday and/or 40 hours per workweek, as a result of failing to compensate them for performing work off-the-clock and as a result of failing to incorporate the value of pay for alleged non-productive time in the calculation of the regular rate of pay. Haines Decl., ¶ 27.  Plaintiffs estimate that Defendants are liable for a total of approximately two hours of unpaid overtime wages per pay period. *Id.*  Therefore, Plaintiffs estimate Defendants' maximum potential overtime wage liability at $49,252.32 (936 pay periods * 2 hours * $26.31 average regular rate). *Id.*

However, Defendants argue that they never required the Class Members to check e-mails while off-the-clock. Haines Decl., ¶ 27.  Further, as with Plaintiffs' claim for unpaid minimum wages, Defendants argue that Plaintiffs' claim is not amenable to class treatment because employees did not separately record the time spent checking e-mails off-the-clock, and therefore it would require an unmanageable series of mini-trials to determine how much time each employee spent on off-the-clock activities. *Id.* Finally, Defendants argue that, even if Plaintiffs were able to prove that Class Members engaged in non-productive activities and that the value of pay for non-productive time should have been incorporated into the Class Members' regular rate of pay, the resultant regular rate underpayment would be minimal. *Id.* Therefore, Plaintiffs discounted this claim by 25% for the risk of non-certification, and by an additional 15% for the risk of being unsuccessful on the merits, for a projected total recovery of $31,398.35. *Id.*

Rest Period Violations (*Stoneledge*): **$994,370.80**

Plaintiffs argue that Defendants' compensation plan does not separately compensate employees for rest periods. *See* Haines Decl., ¶ 28.  During the Class

16

Period there were approximately 55,580 shifts worked exceeding at least 3.5 hours in length (thereby entitling the employee to at least one rest period). *Id.* Plaintiff calculated Defendants' maximum exposure on this claim at $1,462,310 (55,580 violations * $26.31 average rest period premium). *Id.*

However, Defendants argue that they are not liable for rest period premiums since the employees were authorized and permitted to take rest periods, but rather they, at most, could only be liable for the 10-minutes of unpaid time during the rest periods, which would have reduced the liability by over two-thirds (i.e., 20 minutes unpaid time per 6.0-10.0 hour shift vs. 1-hour premium pay). *See* Haines Decl., ¶ 28. Although Plaintiffs believes that the law supports their reading of the statute, Plaintiffs were unaware of any controlling precedent directly on point. Defendants also argue that individualized inquiries would be necessary to determine whether certain rest periods were taken. *Id.* Plaintiffs thus discounted this claim by 15%, to account for the minimal risk of non-certification, and an additional 20% to account for the risk that Defendants could prevail on the merits in establishing a lower damages calculation, to arrive at a projected total of $994,370.80. *Id.*

Waiting Time Penalties: **$42,931.20**

There are approximately 176 Class Members who separated their employment with Defendants within the three-year statute of limitations period applicable to Labor Code section 203. Haines Decl., ¶ 29. However, only 17 of those Class Members did not release their rights to bring a waiting time claim through the *Nable* settlement. *Id.* Using an estimated average waiting time penalty of $4,208.96 ($17.54 average hourly rate of pay * 8 hours per day * 30 days), resulting in a total maximum exposure of $71,552. *Id.*

However, Defendants maintain that no waiting time penalties were recoverable from alleged rest period violations. *See Ling, supra,* 245 Cal. App. 4th at 1261 (holding that waiting time penalties are not recoverable as a result of unpaid meal and rest period premiums); Haines Decl., ¶ 29. To the extent that Plaintiffs'

waiting time penalty claim is derivative of the unpaid non-productive time claim, Defendants argue that it is overstated because not all of the former employees could be proven to have experienced an underpayment of wages. *Id.* Defendants also argue that waiting time penalties are not appropriate because they attempted to pay employees all final wages owed in good faith upon their separation, therefore precluding a finding of willfulness necessary to obtain waiting time penalties. *Id.* Plaintiffs therefore discounted the maximum exposure by 25% to account for the risk of non-certification of Plaintiffs' *DTLA* claim and the risk that the Court would find that *Ling* prevented this claim from being premised upon Plaintiffs' rest period claim, and an additional 20% for failing to prevail on the merits, including the inability to establish willfulness, to arrive at an estimated exposure of $42,931.20. *Id.*

    <u>Wage Statement Violations</u>: **$39,840**

    Plaintiffs also claim derivative wage statement violations as a result of the foregoing substantive wage and hour violations. *See* Haines Decl., ¶ 30. Treating each wage statement issued as deficient, Plaintiffs calculate Defendants' maximum exposure for wage statement penalties at $66,400 (25 "initial" violations at $50 plus 664 "subsequent" violations at $100). *Id.* However, Defendants argue that rest period violations cannot support derivative wage statement penalties. *See Jones, supra*, 2012 WL 3264081 at *8-9 ("[Plaintiffs] cannot advance a claim for noncompliant wage statements or failure to pay wages due upon termination based solely on alleged violations of section 226.7."); Haines Decl., ¶ 30. In light of this argument, as well as the potential failure to prove that the violations were "knowing and intentional" as required by Labor Code § 226(e), Plaintiff discounted this claim by 25% for the risk of non-certification and discounted 20% for the risk of being unsuccessful on the merits, for an estimated exposure of $39,840. Haines Decl., ¶ 30.

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

<u>PAGA Penalties:</u> **$43,923.75**

The success of Plaintiffs' PAGA claim is wholly dependent upon the success of their underlying claims. Haines Decl., ¶ 31.  Assuming that Plaintiff could prove at least one rest period violation in each pay period within the PAGA period, Plaintiffs estimate Defendants' maximum PAGA exposure at $68,900 (calculated from 689 pay periods at $100 per violation). *Id.*; *see also Amaral v. Cintas Corp. No. 2,* 163 Cal. App. 4th 1157, 1207 (2008) (finding "initial" violation rate applies until employer is notified that it is violating a Labor Code provision). However, these penalties derived from the underlying wage and hour violations discussed above, which Defendants dispute. *See e.g.*, *Green v. Lawrence Service Co.*, 2013 WL 3907506, at *5, n.5 (C.D. Cal. 2013) (explaining that a PAGA claim's success was determined by the merits of its underlying claims); *see also* Haines Decl., ¶ 31. Moreover, Plaintiffs recognize that the Court has discretion to reduce any award of PAGA penalties where it views them as duplicative. Haines Decl., ¶ 31; *see also Thurman, supra*, 203 Cal. App. 4th at 1135 (affirming reduction of PAGA penalties); *Fleming, supra*, Case No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047, at *4 (reducing PAGA penalties from $2.8 million to $500,000). Plaintiffs therefore discounted this figure by 25% for risk of being unable to prevail on the underlying claims, and by an additional 15% to account for the likelihood of this Court reducing penalties, to arrive at an estimated exposure of $43,923.75. Haines Decl., ¶ 31.

Using these estimated figures for each of the claims described above, Plaintiffs predict that a reasonable recovery for the Settlement Class would be approximately $1,253,552.10. Haines Decl., ¶ 32. Therefore, the proposed recovery to the Settlement Class of $1,285,000 *exceeds* Plaintiffs' projected potential recovery, while avoiding the further expense and serious risks associated with class certification and trial. *Id.* Considering the risk of non-certification, failure to prevail on the merits, and the Court's power to reduce PAGA civil penalties, the proposed

19

Settlement falls well within the realm of being fair, reasonable, and adequate. *See e.g.*, *Altamirano v. Shaw Industries, Inc*, 2015 WL 4512372, at *9 (N.D. Cal. 2015) (preliminarily approving wage and hour class action settlement, stating, "[a]lthough 15% represents a modest fraction of the hypothetical maximum recovery estimated by Plaintiff, that figure is sufficient for the Court to grant preliminary approval given the merits of Plaintiff's claims."). Preliminary approval is appropriate since the Settlement will provide <u>significant</u> monetary relief to the Class Members without the uncertainty, delay, and additional expense of further litigation.

### e.   <u>Discovery Completed and the Status of Proceedings</u>

As discussed in Section II.C, *supra*, the Parties engaged in extensive informal discovery, research and investigation prior to reaching the proposed Settlement. Specifically, prior to mediation, Defendants provided Plaintiffs with key class data, including the number of current and former Class Members and their dates of separation, if formers, Class Members' timekeeping and payroll data, and relevant policy documents in effect during the Class Period. Haines Decl., ¶ 19.  Plaintiff conducted a detailed analysis of this data to create a comprehensive damages model prior to attending mediation. *Id*.  It was only after this exchange of pertinent data and relevant policies that the Parties engaged in mediation with Jeffrey A. Ross, a highly respected wage and hour class action mediator. *Id*., ¶ 20.  The Settlement was reached as the result of the mediator's proposal, which both Parties accepted, and months of additional negotiations over the finer deal points. *Id*.

### f.   <u>The Experience and Views of Counsel</u>

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378.  Here, Plaintiff is represented by competent and experienced counsel who possess extensive experience litigating wage and hour class actions from both the plaintiff and defense side and have been appointed as class counsel in numerous

cases alleging similar claims. *See* Haines Decl., ¶¶ 2-8; *see also generally*, Declaration of Tuvia Korobkin ("Korobkin Decl."); Declaration of Stacey M. Shim ("Shim Decl."); Declaration of Michael D. Singer ("Singer Decl."). Class Counsel conducted an extensive review of Defendants' records produced for mediation as well as relevant policies in effect during the Class Period and drew on their extensive experience in similar cases to assess the strengths and weaknesses of Plaintiffs' case. *See* Haines Decl., ¶¶ 19-20. The Settlement was also reached at arms'-length with the input and assistance of Jeffrey A. Ross, an experienced and highly respected neutral wage and hour class action mediator. *Id*. This factor supports preliminary approval of the Settlement. *See Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF SHx, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.   The Preliminary Approval Standard is Met

At this stage, the Court can grant preliminary approval of the Settlement and direct that the Class Notice be given if the proposed Settlement: (1) falls within the range of possible approval; (2) appears to be the product of serious, informed, and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995); 4 *Newberg on Class Actions* § 11:24-25 (4th Ed. 2013).  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### a.   The Settlement is Within the Range of Possible Approval

The proposed Settlement reflects an excellent recovery for the Class Members in light of the significant risks of litigation. The proposed Settlement will provide substantial compensation for contested claims and derivative penalties, and the average payments of $2,255.68 <u>greatly</u> exceeds the average payment achieved

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

in other wage and hour class action settlements.[5] Thus, Plaintiff submits that the proposed Settlement is within the range of possible approval such that notice should be provided to the Class Members so they can consider the Settlement. The Court will have the opportunity to again assess the reasonableness of the Settlement after the Settlement Class Members have had the opportunity to opt-out or object.

### b. The Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations

This proposed Settlement is entitled to an initial presumption of fairness as it is the result of factual investigation and data analysis; the exchange of substantial information and class data, including timekeeping and payroll records; arm's length negotiations by counsel; mediation before an experienced wage and hour class action mediator; and additional months of negotiation. *See* Haines Decl., ¶¶ 19-20. Thus, the proposed settlement is entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992).

### c. The Settlement is Devoid of Obvious Deficiencies

The Settlement will provide substantial tangible monetary relief to Class Members. Moreover, the amounts proposed for Plaintiffs' incentive payments, settlement administration costs, attorneys' fees and costs, and the PAGA payment to the LWDA are all reasonable and appropriate. Because the Settlement is devoid of obvious deficiencies, this factor supports preliminary approval.

## B. THE SETTLEMENT MERITS CERTIFICATION

### 1. The Proposed Class is Numerous

Under Rule 23 of the Federal Rules of Civil Procedure, a class action prerequisite is that the proposed class is so numerous that joinder of all members is

---

[5] *See e.g.*, *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 (E.D. Cal. June 11, 2012) (approving average payments of approximately $198.70); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 (S.D. Cal. Aug. 26, 2013) (approving average payments of approximately $108).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

impracticable. *See* F.R.C.P., Rule 23(a)(1). Here, the proposed Settlement Class consists of approximately 337 members, rendering it impracticable to gather all Class Members and bring them before the Court. *See* Haines Decl., ¶ 22; Settlement, ¶ 1.5. Thus, the proposed Settlement Class satisfies the numerosity requirement.

### 2.    Common Issues of Law and Fact Predominate

Plaintiffs maintain that the commonality requirement is satisfied because all of Plaintiffs' claims are predicated on uniform company policies/practices, such as Defendants' class-wide commission-based pay plan that resulted in the alleged failure to compensate employees for non-productive time and paid rest periods, which Plaintiffs contend arise from a common core of salient facts. *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (certifying overtime class); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122 (C.D. Cal. 2011) (certifying overtime class).

### 3.    The Claims of the Named Plaintiffs Are Typical

"Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *Hanlon, supra*, 150 F.3d at 1020. Here, Plaintiffs' claims are typical of those held by the Class Members. Like other Class Members, Plaintiffs were employed by Defendants during the Class Period and were paid using Defendants' commission-based compensation plan. *See* Haines Decl., ¶¶ 10-14; *see generally*, Gardiner Decl.; Greco Decl.; Conroy Decl. Plaintiffs were not separately compensated for rest periods or paid for time spent performing "non-productive" tasks. *Id*. Plaintiffs were therefore impacted by the same challenged policies that allegedly injured the Class as a whole, and were subject to the same defenses forwarded by Defendants as to the Class Members, and thus are typical.

### 4.    Plaintiffs and Class Counsel Are Adequate

The adequacy of representation requirement examines conflicts of interest between named parties and the class(es) they seek to represent, and requires counsel

23

to vigorously prosecute the action on behalf of the classes. *See Hanlon, supra*, 150 F.3d at 1020. Here, there are no conflicts of interest between Plaintiff and the Settlement Class he seeks to represent.  Class Counsel also has extensive experience in wage and hour class action litigation, have vigorously litigated this case, and have no conflicts of interest with the Class Members. *See* Haines Decl.; Korobkin Decl.; Shim Decl.; Singer Decl.

### 5.    Rule 23(b)(3) Predominance is Satisfied

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *Amchem v. Windsor*, 521 U.S. 591, 623 (1997).  Because Plaintiffs seek certification for settlement purposes only, however, manageability of trial need not be considered. *Id.*, at 620.  The proposed Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" dominates this litigation. *See Hanlon, supra*, 150 F.3d at 1022.  Plaintiffs assert that this common nucleus of facts includes, among others, Defendants' use of an allegedly unlawful commission-based compensation plan and failure to separately compensate for "non-productive" time, failure to separately compensate for rest periods, alleged issuance of defective wage statements, and alleged failure to timely pay all final wages, each of which predominate over individualized questions.

### C.    THE PROPOSED CLASS NOTICE SATISFIES DUE PROCESS

This Court should order distribution of the proposed Class Notice to the Settlement Class by first class mail, postage prepaid, using the last known mailing address information provided by Defendants. This manner of giving notice is the "best notice practicable" under the circumstances because it provides "individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle and Jacquelin* (1974) 417 U.S. 156, 173. Here, Plaintiffs propose that the settlement be administered by Kurtzman Carson Consultants, LLC ("KCC"), an experienced class action settlement administrator. *See* Declaration of Derek Smith.

Class Members' addresses will be ascertainable through Defendants' personnel and payroll records, which Defendant will provide to KCC within 20 calendar days of preliminary approval. *See* Settlement, ¶ 3.3. To the extent that any notices are returned, KCC will conduct skip traces to obtain current address information. *Id.*, ¶ 3.5. The proposed Class Notice advises the Class Members of the nature of the claims, basic contentions and denials of the parties, the key terms of the Settlement, the uniform 60-day deadline to opt-out or object to the Settlement and the procedure by which to do so, explains the recovery formula and expected recovery amount for each Class Member, and advises them that they will be bound by the terms of the Settlement if they do not request exclusion. *See* Settlement, Exhibit A (Class Notice). The proposed Class Notice will also notify Class Members of the final approval hearing date and the requirements and consequences of opting in to the FLSA portion of the Settlement, provides the contact information for Class Counsel, and advise Class Members that they may enter an appearance through counsel if they wish to. *Id.*; *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (Finding notice satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, provisionally certify the Settlement Class, and enter the proposed order submitted concurrently herewith.

Dated: August 13, 2018

Respectfully submitted,
HAINES LAW GROUP, APC


By:    /s/ Paul K. Haines
Paul K. Haines
Attorneys for Plaintiff

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT